We are now ready to continue and welcome Judge Harris to the panel with us now. This is a case of Porter v. Zook and we are ready to hear from Mr. Lee. Okay. Oh, I'm sorry. Of course. And that's what I was notified of. I apologize. No, that's okay. Ms. Davidson, I'm glad to see you. Sorry, I was told of that. That's fine. I'm not frequently mistaken for Mr. Lee. I know. Good morning, Your Honors. This morning, I plan to address Issue 5, which was Claim 11 below. Excuse me. May it please the Court. I plan to address Issue 5, which is Claim 11 below, the State Court's refusal to appoint a risk assessment expert. Time permitting, I'd also like to address Issue 2, which is Claim 1 below, the juror claims. Unless there are other topics the Court would like me to discuss. No, I really want to hear about the juror claims, so please make sure you talk about that. Yes, ma'am, I will. I'm sorry, Judge Shedd, did you start to ask? What was the other claim? The juror claim? Yes, sir. I just didn't catch that. Issue 2, Claim 1 below. Porter's death sentence rests on a finding of future dangerousness. The jurors were posed with a question between whether to sentence him to life without parole or to the death penalty. So the question for them was, if we let him live, what then? And to answer, the Commonwealth presented evidence of the facts of the crime, which is that Mr. Porter had killed a police officer and also instances of his prior misconduct while incarcerated. They argued if he's willing to shoot and kill and able to shoot and kill Stanley Reeves in the way he did, he presents a future danger to anyone else who may encounter him in any similar fashion whatsoever as Stanley Reeves did. And the defendant wanted to present evidence that the actual likelihood of him committing serious acts of violence in the future was very low. He wanted to help the jurors get past their intuition and decide the issue dispassionately based on the facts. In order to do that, he requested the assistance of a risk assessment expert. What the risk assessment expert would have done was he would have identified the relevant base rate of the event. In this instance, that would be that lifetime offenders sentenced to the Virginia Department of Corrections who commit serious acts of violence. So what is the base rate of that? How often does that happen? Then he would have identified characteristics that were particular to Mr. Porter. The research has shown are predictive of whether a person will commit acts of violence in the future. And he would have applied those to the base rate. And then he would have presented evidence about whether Mr. Porter would present a risk of future danger. The state court refused to appoint the expert because the evidence the expert would have presented was irrelevant under state law. Mr. Porter was found eligible for the death penalty based only on a finding of future dangerousness. The jury rejected the violence aggravated. Why did the court say it was irrelevant under state law? For two reasons. The first is under the right to rebut, which would have been under the future dangerousness inquiry. They said that it was irrelevant because the future dangerousness inquiry under state law only focused on the defendant's character, background, and prior acts. In this instance, the assessment would have taken into account Mr. Porter's prior acts and his background. But it also would have taken into account the base rate, which is what he would have been compared to. With regard to the mitigation, which is the other aspect of this claim, the court said it was irrelevant because that also was limited to the defendant's character, background, and prior acts. Essentially, if the evidence didn't come in as mitigation, it could not come in to rebut the argument for future dangerousness. That was what the state court held. Mr. Porter appealed based on both the Eighth Amendment and the Fourteenth Amendment. And today, I'd like to concentrate on the Fourteenth Amendment, the due process, because that was so egregious. The state court upheld, excuse me, the state Supreme Court upheld the trial court's decision and found that the evidence was irrelevant under state law. That decision was a violation of the clearly established federal law as the Supreme Court of the United States set forth in Simmons versus South Carolina. And Simmons was an application of Gardner. In Simmons, the defendant there was facing allegations that he would be a danger in the future. And what he wanted to present was evidence that he would be ineligible for parole. His crimes involved older women, and in prison, he wouldn't have the opportunity to come into contact with older women. So he wanted to tell the jury, you don't need to worry about me. I'm going to be in prison for the rest of my life, and my likely victims, I'm not going to come into contact with. The state court there didn't allow it to come in because they held that parole ineligibility was irrelevant to the question under state law. The Supreme Court, of course, as you know, reversed and said that when the prosecution proceeds and argues the defendant should be sentenced to death based on future dangerousness, the defendant has a right to present relevant rebuttal evidence. And that's all that Mr. Porter wanted to do here. He wanted to present the rebuttal evidence that he would not be a future danger in prison. And that was the question that was most important to these jurors when they went back into that courtroom. If we let him live, what then? Will there be something he does that is on our conscience, or can he be safely contained? So maybe you could get to the jury issue and your best arguments there. Sure. The juror issue, Mr. Porter requested and received a change of venue because the publicity that this case was given in the Tidewater area. It was changed, it was moved up to Northern Virginia. And at the beginning of one year, the jurors were informed that this is a case out of Norfolk, that this is the killing of a police officer from the Norfolk Police Department. And there was extensive questioning by the defense about this, how do you have relations to law enforcement in that matter? This particular juror volunteered that he had a nephew who was an Arlington police officer. He withheld the fact that he had a brother who was a sheriff's officer in Chesapeake, which is the jurisdiction. I mean, he didn't volunteer it, he was asked a question and he was supposed to answer that question fully. As the other jurors did, you know, two jurors later, when he was asked whether he had any relatives, he responded with, you know, multiple relationships. This is, you know, that's the common sense implication of the question. The answer fully doesn't make it a dishonest answer, though, does it? It doesn't make his answer dishonest. I think that in this... Under the law, do you think? I think that in this instance, it does. I mean, I think that what you're getting at there, Your Honor, is the McDonough case. And in that case, the juror there didn't respond to the question. It wasn't that he affirmatively lied. He didn't give the honest answer. And that's what this juror didn't do. Well, you're saying that based on 12 years of picking juries, too. I mean, it's astounding to me how people don't, for a lot of reasons, they forget. I've actually seated jurors before, and the first witness, and we would name them. These are the witnesses who planned the call. And a juror raised his hand there, speak to him, and said, gosh, that witness whose name was called, he's a good friend of mine. I didn't don on him. You don't know what happens in their minds. But there's no case law that calls an incomplete answer or even no answer a dishonest answer, is there? I would say that the McDonough case and the facts in that case, which is the Supreme Court of the United States is considering, that was an instance where the juror had not given any response to the question in which that was the issue in McDonough. But going back to the other point, in this case, we know a little bit more about it than just that this juror didn't respond. We know that. But your argument doesn't hinge on whether or not it's a dishonest answer, do you think? No, we actually have two claims. And I don't want to just pin you on that. I want to just ask a question about that. Sure. And our other claim is the Smith v. Phillips claim. And that's the claim that hasn't been adjudicated by any court yet. We presented it to the state court. The state court did not adjudicate it. We brought it up to the United States District Court. That court didn't adjudicate it. Instead, adjudicating an implied bias claim, which we didn't raise. What do you mean you didn't raise an implied bias claim? I thought your whole argument as to exhaustion was that in your state habeas brief, you went through all three forms of bias, right? Yes, ma'am. In the state court. But in the district court, we did not re-raise the implied bias. We only raised the actual bias. Can I ask you about the exhaustion question that the state has raised? So what's your, I mean, I'm looking at your state habeas brief. And in fairness, you know, the heading of that entire section is sort of a McDonough claim. And the whole thing is kind of framed around McDonough. So what's your response to this exhaustion question? Because I can see why the question would arise. I'm sorry. The state habeas petition? Yes. That you exhausted this in state court. Our position is that, you know, we presented all three theories under which we thought that relief could be granted. And the McDonough was one of the theories. Actual bias, excuse me, actual bias was another. Implied bias was another. And the warden understood that because the warden replied to all three in state court. And so are you, so you're relying for your exhaustion point on the state's brief as well as your own? Yes. Okay. You think we can look outside your brief to see whether you fairly presented an issue? I think that you can look outside of our brief to see that it was understood by the parties at that time that the issue was presented. Yes. And that actually wasn't the, that wasn't the argument that the court, I'm sorry, that the warden made in the court below either. And the district court, the warden argued that there was no such thing as an actual bias claim. He didn't argue that we didn't exhaust it. He argued that there was no such thing. And it was only in this court where he is now arguing that we didn't exhaust it in the state court. Your claim before us now is actual or implied? Actual. You don't, you aren't pursuing an implied. I don't know what's wrong with that microphone. It is not you. It happened all morning. I don't know. We'll, we'll fix it later. But it's not you at all. I think I'm just getting a little too anxious. No, no, no. I don't think so. You kind of tried to take the blame for it. But I think it's the equipment. I don't want that to throw you off your argument at all. But you in front of us only have an actual. That's correct. We're not proceeding on an implied bias claim. And the facts that support our actual. This is what I was going to get to. Would you tell me why you think the actual claim is supported based on what the answer would have been? Well, so I think that what we need to do is we need to back up and look at the posture of the case, which is that we, the evidence that was presented in support of our actual bias claim came from an interview with the juror. The juror. I know. Let's go back and look at what what happened and what the facts were at the time. Yes. Aren't you objecting to the fact that you now base you base your actual bias argument on the fact that Mr. Trickles brother was a law enforcement officer or jail or something? It's not quite clear to me. And I couldn't find that this morning in the record. Yes. When I was reviewing it in the neighboring county, neighboring to where the incident occurred. Is that it? Yes, he is the Chesapeake Sheriff's officer. And our argument that he was biased. Is there in the record what his job was for Chesapeake? I'm just asking. Don't look too much. He's a sheriff's officer. We provided an affidavit from his brother that's in the record. I know. But what his job was, I said, I had some thinking in my mind. Maybe he was a deputy who was a jailer. But is that did I make that up or something? He was a deputy sheriff. And part of his duties included transporting prisoners that my understanding is that wasn't the sum total, but that was part of his duties. That makes actual bias. Why, given those facts and the fact he didn't respond fully, that creates actual bias. And there's one additional fact, Judge Head, which is that this juror, when he was approached by State Habeas Council, said that the reason that he found the widow's testimony so persuasive was because he had a brother who was a law enforcement officer and that that was on his mind during this. So this wasn't an instance where the juror thought about this, you know, months later, years later. The officer's widow was the first witness to testify. Just a quick question. Yes, ma'am. Status of that affidavit. I know that the state moved to strike the affidavit. Was it ever? The Supreme Court of Virginia said that they would apply the appropriate evidentiary rules to both of our motions to strike. It was unclear what they had done. But I was just curious. So you're speaking about the affidavit of the law student in turn? Okay. The juror had said this about how he was moved by the testimony because his brother was a law enforcement. Correct. And what do you think the standard is we have to apply to that fact? I'm looking at what the four calls is. Is that a strike for calls? I think that this court actually doesn't have enough information at this point in time. No, I'm saying what's the standard? The standard, yes. The standard is actual bias, that this juror was actually biased and he would have been disqualified. Yes. If you had that person give you all that information, you would likely then ask, I understand that. Could you be fair? Yes. Everything that you said doesn't mean he couldn't be fair. I see that I'm out of time. No, I want you to answer this and then we'll let you step back. You've reserved some other time. He said that he could be fair when he was asked about his nephew. But in this instance. No, no, but I'm saying even if all this information that you now say you have as you presented was given to the court at the time of Jewish selection. Likely. Court would say, could you still be fair? And there's no indication he would say he couldn't be fair. I think that if he was being honest, we would allege that he couldn't be fair because that relationship was so key to him that he kept it a secret. Oh, no, no, no. But that could have been because he forgot it. I'm just saying you can have somebody that's ultimately looks like he's involved or has experience. And you ask that person, you just can't strike a person because you just don't. We came with a preemptory strike because you don't want them. But generally, it is if somebody raises that strike for calls, the court may talk to him or ask, can you still given that? Can you still be fair? Now, what do we do with that? There's nothing. There's nothing. What if this is a fact that there's nothing that we see in that conversation that makes it clear he could not be fair? I know you argue that, but but it makes it clear to us. If it's not clear to us, he couldn't be fair. What do we presume he couldn't be fair? I think at this point in time, it would be it would be premature to get to the merits because there has been an opportunity for an evidentiary hearing on this claim in order to actually bring in the jury and ask the question. What about base? What standard do we apply based on the facts we have right now? Do we say he would not have been stricken for calls based on the facts that we have? Because it seems to be far afield from the cases where we do find bias in jury cases. And in those cases, there's been an evidentiary hearing where there would be more evidence before the court. I think that what this court says is that we have met the threshold for an evidentiary hearing, and it should be remanded for an evidentiary hearing on this issue. All right, you reserve some time. I thank you. Yes, sir. Thank you. Mr. Delegan, when you're ready. Please support. Good morning. I am Matthew Delegan, senior assistant attorney general on behalf of the warden this morning. I'll take just a moment to respond to the claim that was addressed first by Mr. Porter's counsel with respect to a appointment of a risk expert. And I first have to have to take issue, as we did in the brief, with the characterization of what the ruling by the state Supreme Court was. The request for a risk expert was presented under state precedent, similar to AIG, that he's entitled to experts if he shows a particularized need for it. Part of that motion attached a report that the same expert prepared in a different capital case. The Supreme Court reviewed that and found two things. It found that if this was offered as a proffer of the sort of report that the expert was expected to make in Mr. Porter's case, it was not particularized under state precedent to him. That it was a general statement of risk characteristics in prison. Found also that, you know, even if it was argued that this was particularized to the particularized evidence as to him, even if you took it less hypothetically and just weighed it as a particularized testimony for the inmate for whom it had been originally prepared. So the Supreme Court did not find that a properly prepared particularized report of a risk assessment expert is never admissible. What it found was based on the proffer that was part of his motion requesting appointment of a risk expert was he had not shown that the expert he was asking for was going to prepare that sort of particularized report that would be admissible under Virginia law consistent with Simmons and the other cases that have been cited. So I think the holding, while it addresses some of the themes that were discussed, in this case it's not as broad as has been argued to say that you can never about, that you in this field. Let me ask you this. What was the general problem? This is more factual. He hadn't interviewed the defendant and plugged his name into the report? Or he hadn't talked about the individual in this case specifically enough? Was that the issue? The issue is. I'm talking about in this case. Yes. What was the fault in this case? That the report which was attached and proffered was individualized to this defendant? No, I think the trial court and the Supreme Court of Virginia took it as a proffer of the sort of report that this expert would prepare in Mr. Porter's case where he appointed in that as he had prepared in the Gray case. Well, then why isn't that? I'm just asking why that then a broader reading than you're giving it? Because they're saying this is not sort of the type of report that we would allow him. But the type of report was not the fact that it was expert evidence about risk assessment. The type of the report was that it was an expert report that focused solely on a statistical analysis of base rates and other criteria, which the Supreme Trial Court and Supreme Court affirmed were not particularized to Mr. Porter's situation. That there was a report that almost as the court suggested, you could plug in another name and submit in another case. It was at bottom a report on prison risks. And the Supreme Court's holding was that that sort of report, not any risk assessment report, but that sort of report that Dr. Cunningham was being proffered, would prepare, was not sufficiently particularized. Thank you. Do you want to move on to the witness? Yes, sir. Juror question. Yes, sir. Well, let me say, you may want to move to something else. I'm just saying that's what she thinks. Be glad to go to the juror question next, Judge. And if there's time to address something else, I'd be happy to do that as well. About the what? If there's time after the juror to address the third issue, the court is concerned with, I'd be happy to do that as well. But to address the juror question. She said the question now is actual bias. What do you say about that? Standards and facts in this case and application of the law to the facts. As to actual bias, I think what I first have to say is what Judge Harris had addressed, is that that was not the claim in state court. They did, as has been acknowledged and I acknowledge in the brief, list three different kinds of biases. They make argument, Mr. Court of Counsel does, that the warden admitted that there was an argument in state court by my motion to dismiss. I dispute that characterization of it. My motion is missed. It's actually part of the record here at JA339899. And I think a fair reading of our motion instead is to show that Porter, in fact, failed to allege any facts to support a claim of anything other than McDonough, juror dishonesty. You did say that Porter alleges that the juror was either biased in fact or that bias should be implied or the McDonough claim. So it does seem like you read his brief to be raising that claim. And it may be that allege was an infelicitous word. What I was referring and what I cite in my motion dismissed at that point is the opening paragraph of his claim where he says bias comes in three flavors and describes them. But what I think a fair reading of my motion is from that point forward is that he does not, in fact, make any argument under any of the other two varieties of bias. Right. You definitely say he has failed to show. You say he failed to show that he was biased. But that's not the same as saying he didn't raise the claim. You sort of take on the claim on the merits. To the extent I take on the claim on the merits in the state court, Your Honor, I think a fair reading of what I said was he doesn't make such a claim. He fails to allege any facts in support of this claim, which I think fairly read is he doesn't raise that claim in the state court proceedings. If all he does is say such bias can be grounds for relief and never elicits any particular allegations or connects any allegations to the standard to claim relief under that form of bias in state court argument is he hasn't exhausted it. It's difficult at times, I guess, because sometimes people will state what the law is in a general way and then lawyers do it, too, per se. I mean, per se, per se people, lawyers, judges may be on a case, although I rarely see that. They'll state the law generally and then move on to the specifics of their case. And so I don't know. But we have to deal with what I think was a fair reading of it. And your fair reading of it is you responded to the implied bias. My fair reading of it is I've responded to the McDonough claim for juror dishonesty, and my comments on the other claims were simply that he had alleged no facts in support of them. No facts. You can talk about McDonough in just a second, but I want to ask about on the bias claim, no facts to meet what standard? To show that the juror was actually biased. OK. Not the basis for a reasonable request to strike for cause, but a reasonable basis to strike for cause. Is that it? In other words, is it the standard is to raise the challenge? In other words, you see what I mean? There's enough information to raise the challenge, to force the court to deal with it, or is enough information that had the information been given to the court, the court would strike for a cause. As I understand the actual bias claim that they are doing now, it's the, I've lost the order, the latter, that it in fact establishes bias. It doesn't make any difference. I'm just asking, though, what standard are you suggesting that we apply in looking at that claim? In other words, knowing the facts that they've been presented to the court, would the court strike for cause, or would the court have reason to consider striking for cause? That's my question. I think that it would strike for cause as actual bias. I think the implied bias claim that's now been abandoned would be a different analysis. I'm so confused by this, too, because it seems like in this posture, the ultimate question we're asking is, should there be a hearing? Should someone ask this juror, what were you thinking at voir dire? Did you forget that you had a brother-in-law in enforcement? Did you misunderstand the question? What happened at voir dire? What did you mean when you told that law student that you viewed the testimony in a particular way because of your relationship with your brother? What's the standard we apply in deciding whether some judge somewhere should ask this juror those questions? What's the standard for that? Should there be a hearing so that we can get to the bottom of what happened here? I think, and I haven't read Phillips in the last few days, so my recollection of facts may not be as tight, but I think what it requires is that the allegation prior to the hearing be sufficient that, if true, would establish actual bias. Well, they're alleging, right, that he purposefully misled during voir dire so that he could stay on the jury. If that's true, that's actual bias. We said that in Conaway. So that if you purposely mislead during voir dire in order to get onto a jury. I didn't see any allegation that he misled in order to get on the jury. In their pleading. Well, we can ask on rebuttal, but I thought I saw that. So we can agree that if they said that, that's the kind of allegation where you would get a hearing. If they said that he sought to get on this jury in order to... That he purposely misled during voir dire in order to get onto the jury. Because he was worried that if he said, I also have the brother, that then he would be struck. Would that have to be supported by any facts? Or could they just make the allegation of that? I'm stepping on her question. I'm stepping on Judge Harris's question. But we're at the same point. We're at the same point. Yeah, because I've seen, I think I've seen the record. And the assertion that he did it for the purpose of, I don't know, that's not in the record anywhere. He certainly didn't say that. What he said was, this is what I think we know in the record. He didn't answer the question fully. Why or why not, we don't know. And then when he's later approached, he said, yes, he openly said, yeah, I have somebody. I have a brother. Oh, I couldn't quite get it. But the brother, family connection. And he said... And he recalled it during the widow's testimony, which moved him. That's what I was going to say. He recalls that. But does that have anything to do with... That didn't raise any inference on that. He lied to get on the jury too. So he could appreciate that testimony. That doesn't establish that fact. And they may... I heard him this morning saying that's what they're asserting. But I'm... Is all they have to do is just say it? And I'm not recalling Phyllis specifically, so I can't cite to it. But I can't argue or posit this morning that that's a workable standard. If a bare allegation is enough to require a hearing, they're going to have to... That could force a hearing to every juror in every case. It would be every case. It could be every case. So to come back to where I was answering Judge Harris's question, I think in order to get a hearing, they have to come forward with non-allegation, but evidence that would show bias. It's untested evidence. It may be rebutted. It may be disproven. And it may be sufficient to come forward with evidence that in the form they have here is affidavits or... Have they done it in this case, in your opinion? No. Why not? They've established everything that we've said. He didn't answer fully. He later admits he does have a brother in that capacity. And he also says he was moved by... I think this is the victim's wife, the officer who was slain, his wife. He was moved by that testimony. And I think you may even go further and say something like, man, police, you know, they really do a lot for us and don't appreciate us. Maybe I'm making that up, but I sort of thought that. All that, given all that, what does that amount to in your argument? Enough for a hearing or a relief or anything in this case? I don't think so. Well, you have to argue that too. What also is in the record is the fact that he did volunteer, that he had relatives in law enforcement. So we don't have him concealing the fact that he has a connection to law enforcement. He acknowledged that he had a relative in Northern Virginia, in actual police, not sheriff, and was asked the pertinent question based on that, whether his relationship to that family member would affect his ability to be fair and impartial. And that's all that was asked of the other witnesses who gave one or more members of law enforcement. They were only asked that same single question, whether that would affect their ability to be impartial in this case. But a nephew in Northern Virginia might be viewed differently than a brother in the adjacent county where another law enforcement officer had also been killed. Except that the connection that's being argued is not some sort of family connection that would be closer to him. The connection that's being argued is because he has relatives in law enforcement, he's sensitive to the risks they face. And the patrol officer in Northern Virginia certainly faces as strong, if not stronger risks than a sheriff's deputy transporting prisoners. I think there's at least, it might be sub rosa, but there's at least the suggestion as I read it, that the brother works in the neighboring county to the incident. And I think, it's a little bit hard to know exactly what the argument is on this point, but I think it is that you feel more strongly about a brother. I understand your response. You feel more strongly about a brother than a nephew. And it's somebody that's closer to the incident where the camaraderie of police officers would be stronger. I think, isn't that implicit in what they're saying too though, really? You don't think so? Because his brother is geographically closer, even though in a less similar job, he has a closer affinity to how his brother might feel. I said, don't you think that's at least what they suggest in how they're arguing this case? If you don't, you don't. Okay. I don't think they've come out and said it. I think they connected it. I'm still going back to this. Yes. By the way, do you know, I couldn't find it in the record. Normally, a judge would ask at least, our practice in the District of South Carolina would be, at the end you'd ask, okay, is there anything else you can think of, any reason you couldn't be fair in this case? Was that overall catch-all question asked? Do you know? I don't know as I stand here. Okay. And so, still, I'm taken with this. What are we to do with the information that we have, in your opinion? It doesn't lead to a reversal, a grant of the petition. It doesn't lead to a hearing, because given all the information that we have, it's not enough that anybody would ever be excused for a cause. So what's your standard that you would have us apply? I mean, isn't that an obvious, isn't that something you've thought about? Yes. Okay. I'm just asking you what your answer to that is. Well, my short answer is no, he's not entitled to relief on this claim. And why? He's not entitled to relief on the McDonough claim for the reasons the district court said. He was not dishonest on the McDonough standard. He at most omitted. So he failed on the first McDonough test. I'm sorry, can I ask you just one quick question on the McDonough? I'm sorry, this will be very quick. So the state court's adjudication, I just didn't understand it of the McDonough issue. In its entirety, it was, you know, he didn't say anything that was literally false. And he was never asked whether he had an additional relative, nor given any opportunity to say that he did. And what I can't understand is why the opportunity to say, yes, I also have a brother-in-law in enforcement, wasn't when they just pointed at him and said, explain why your hand is up. Why isn't that a fully adequate opportunity to say, I have two relatives in law enforcement? I just don't understand what the state court was getting at. And that makes me nervous because I know we have to say that that wasn't unreasonable. And I don't understand. I think what they were getting at, if I recall the pleadings correctly, was that there was an argument made. I'm not certain of this, but I think what he's getting at is there was an argument made in the pleadings about a further opportunity to have clarified when the counsel came back and said, okay, any more hands. So the state court certainly was not saying he never had a chance to say he had two relatives because that would be crazy. Okay. I think that was the distinction that the state court was making in that part of its hearing. Sorry. But as to actual bias, as I take implied bias has been abandoned at this point. As to actual bias, I don't think there's enough evidence in the record at this point to call for a hearing. There's at most, and giving them inferences in their favor, there's most that he deliberately omitted having a second relative in law enforcement after admitting he had a first. But there's the statement he gave in voir dire, which is all you would get if you had gotten the answer to the first brother, that it would not affect his verdict. We know what question they would have asked if they found that he had a second relative in law enforcement because it's the question he asked when jurors had more than one relative in law enforcement. The same one he asked this juror. Isn't this an extraordinarily high standard that we're looking at on jury bias as actual bias? Isn't it an extraordinarily high standard? It is. And that's my third point, is the cases about bias talk about either having an actual personal interest in the litigation or something that would reasonably be thought to make impossible to give credit to the sort of affirmation this juror gave that he would indeed be fair in this proceeding and set aside any feelings he had for any relatives in law enforcement. He said he could, given whatever inferences may flow from the couple of facts we have in the record, and even giving credit to the affidavit, which apparently got his job wrong, so I'm not sure what else is wrong with it. I remember a Fourth Circuit case that I sat on that dealt with a reporter who covered the first trial. She covered the first trial, wrote about it, and then she was a juror in a retrial, as I remember, something like that. And she was asked, does anybody here have first-hand knowledge? And she didn't say she did. But we didn't say that. That was a dishonest answer. And I think I remember looking at it. It wasn't first-hand knowledge of what happened. She was listening to witnesses. So it was second-hand knowledge. You know, she didn't see the crime. She wasn't involved in it. And there was such a high standard in that case, as I remember. Conor, I think it was Conor. But at any rate, it just strikes me. It seems an extraordinarily high standard. Judge King has talked about that before in cases I've either read or sat with him on. It's an extraordinary standard. And I just don't quite understand what we have in this case to show that standard. Does it match up with any case that you know of? The information that we do have. And again, the information as I understand it, that he didn't give a full answer as to whether that's a threshold entry then into the rest of this. That he did, in fact, have a brother doing some law enforcement work. And exactly what that was is in the record. But I'll be honest. I thought it wasn't quite like a lying officer out on the street enforcing the law, as I remember it. And then he is asked, and he openly admits he has a brother by way of affidavit. And he also admits that the victim, the dead officer's wife's testimony really moved him. I even think he said a little bit more, maybe something about how officers don't get enough credit for what they do or something like that. Maybe I'm making that up. But I'm putting all that on the table. Doesn't that then have to be enough across some threshold to make us think if all that's true and the like that's worse to him, that that would have to be. In other words, you don't have to explore why he did it, why he didn't do it. But given all that, put that together and give him the inferences, the reasonable inferences under our law, that that would be enough for cause. That's what I still keep going back to. I'm trying to say, looking at the facts in the right posture, does it meet the standard? And if it is a strike for cause standard, and you think that it is. I think that it is. And your argument obviously is that all that information would not be enough for a judge to strike on for cause. Not given the answer he already gave to the existing law enforcement member. Can I just add anything? I'm sorry. I see my time expired. I should have asked. I do get mixed up with this sort of, because it's like we're going back in time. Imagine this had all come out in the voir dire. So are you saying that if a lawyer had said to him, do you think that the fact that you have a brother in law enforcement will make you respond in a different way to the victim impact testimony, that because of your brother in law enforcement, you'll find that testimony particularly compelling? And he said on voir dire, yes, I will. You couldn't strike for cause for that? If he said. He said what he said in his affidavit on voir dire. I will find the victim impact testimony especially compelling because I have a brother in law enforcement. You couldn't strike for cause for that? I don't even, I don't, I would have thought you could, but maybe I'm wrong. No, no, you could do it. You could strike for peremptory reasons. But not for cause. But you would have to ask the judge. And would the judge go, okay, I got that testimony. I heard what you said. Could you be fair? Because people will often say I've had any number of things they can say a lot because they bring life experiences, correct? Isn't that correct? Yes, your honor. And because they've had an experience doesn't mean they can't sit through a similar experience. The question is, the judge's answer to do, could you be fair? If the, if the juror goes, yes, I could. Then life is an extraordinary thing to strike for cause. I think that does put it on the table for peremptory strikes. But what's your, she's asking you that question. She sort of looked at me, so that's why I sort of pitched in the question. I'd like to know your answer too, yes. Yeah, yeah. She says she's now heard my answer. She's like, you're yours. She didn't say, she didn't say it. I have an answer too. I think that the fact that he said he found the widow's testimony particularly compelling is him saying he could not be fair. He's already said he is compelled by one side's testimony versus the other, based on this relationship with the brother that he withheld. I think the widow's testimony. So that's not a question, that's just another answer. But if he says he finds testimony compelling, you can find lots of things compelling. But she also presumably applied the laws that was given to him. People listen to witnesses all the time. They can say that person is one heck of a witness and I really liked him. Boy, he gave a good story, but you can still rule against him. To say it's compelling, do you read compelling there to say it's compelling to mean I'm compelled to agree with her? Or just that it's moving, compelling in that sense? How do you read that? I've read it. You've been asked all this and you need to have an answer for it. I'm going to ask the other side the same. Yes, Your Honor. I see my time has expired. Oh yeah, but you get to answer it though. Certainly. Happy to. And I do read compelling to me that it was effective, emotional. That it was something that communicated to him the loss she felt and her children felt because of this murder. A victim's testimony will always fall upon a juror's ears depending on what their own experiences are. But I think the ultimate standard is the question that he in fact answered, whether in light of whatever your background, life experiences, views are, you can stand impartial in this case. And he said he could. All right, thank you. You have no questions? Do you have anything else? Okay, thank you very much. All right, Ms. Davison, why don't you take the balance of Mr. Lee's time right now? He's very generous with his time. Thank you. So I want to talk, when you talk about what is it that's needed here at this point in time, I want to go back to Smith, which is the case that we cite, and talk about what the facts were in Smith that gave rise to the hearing. In Smith, it was a juror who had applied for a position at the district attorney's office while the trial was in progress. During trial, he had revealed that he had an interest in law enforcement, that he had a background as a security guard, that his wife had been a victim of an assault and also had an interest in law enforcement, and having given all those answers, had said he could be fair and impartial. But yet the fact that he applied to the district attorney's office gave rise to the need to have a hearing and that was to decide bias. But it's a qualitatively different thing, isn't it? I have those feelings, but let me also tell you this much. I want to go to work for the prosecutor. And he said he intended to seek employment in law enforcement. I know, but what I'm suggesting to you is different is, he then, we have information, or he or she, they want to go to work for that group that's prosecuting the case so their comments and actions in the case as a juror could reasonably be taken to influence the likelihood of getting something beneficial and personal from it. Isn't that the distinction there? Well, there was no evidence that that was so. I know that, but it's what we take as a reasonable inference. Here's somebody trying to, in your scenario, you point out a distinction. Is there a distinction that there, you're trying to get a job with one of the parties and that your actions on the jury could cover, could carry favor with that person? That is not what we have in this case, anything close to it. No, we don't have in this case where the- And the reason I raise that, right, and the reason I raise that is, to me, in that case that you're talking about, it wasn't that. The answer wasn't, the fact that the answer wasn't complete is what decided the case or was the determining factor, but it's what was omitted. It wasn't anything that he had indicated, which was, I want to go to work for that side. And I mean, that seems to be a quantum leap from what we have here, but you have some more time or either response or something else. Do you want to argue? I wanted to bring this court back to the position that this claim comes before it, and which is that this claim has only ever been allegations that were based upon the No, he did that because he told you he had to go get his wife. You're overplaying that now, aren't you, really? Didn't you indicate he was very nice, very cordial, willing to talk to you, but he told you from the outset, I can't stay here at the barbecue or whatever very long, because I got to go. And then he said, I got to go get my wife. So isn't that overplaying that? Absent compulsory process, he would not speak with us further. I'm saying, aren't you overplaying the suggestion? Are you suggesting that he ran away from you when you were talking to him? I can I can respond. I was there at the time. I'm happy to respond because we went back and he refused to speak to us. We went back at a later time and he would not speak with us. So at that point in time, the answer he gave was that he had to go pick up his wife and he left. We came back to try to speak to him again, and he would not speak to us. Maybe he didn't want to talk to you. He absolutely has a right not to write at the courthouse. And at our trials, we would always say, you have a right to not talk to anybody about this case ever. And if we had a district rule that nobody could even approach a juror in the courthouse after a trial, we would say nobody can even stop you, even ask you. You can stop and talk to him if you want to. But they are instructed there not to even talk to you so you can get your car and get home. And then in the future, it's up to you. Talk if you want to. But you read the fact he gave you that information that he wouldn't talk to you more. We would read what into that? My point is simply that we weren't able to present more facts before the court because we lacked compulsory process to have the juror speak to us further. In Virginia, there's no court who has jurisdiction to grant pre-petition discovery or depositions. So there was no opportunity to put more facts before the court. You aren't admitting then that based on what we have in the record, you can't show a basis. First try for calls, are you? What we're saying is that what we presented is sufficient for a hearing. That we cannot prevail on the facts that we have, but there is enough to get us a hearing. So in other words, you think based on the facts in the record now, you wouldn't prevail. But you, is that correct? That's correct. But you think you want to have, but you're just asking for the opportunity to get more facts. That's correct. Do you have more to say? I mean, you got up and I started to ask you a question. It kind of took your time away. So I'm going to give you a little more time and let you make some more argument if you want to. Little did you expect the 4th Circle would stop asking questions. The day is not gone as I expected. No, if I just have one more point, I would actually like to just take it back to the risk assessment expert if there are no other questions on this. I do want to clarify, though, that the report that everybody's sort of referred to, there being a report attached to the motion and that, you know, we would just sort of plug in and put this same sort of thing for this. It actually was not a report. It was a declaration describing what the assessment would entail. So the description of what the assessment was, how to apply it, would apply the same in Mr. Porter's case because the expert would apply the same methodology. I think, in all fairness to the other side, when I asked him about that point, he kind of allowed that because I said they didn't name him individually. He basically said, no, no, it didn't have to. It showed what he would do. So I think he agrees with you, at least on your more general description of it, I think, based on what I heard. And that's how I took it. Okay. Can I just ask one more question? Sure. Back to the juror thing. It's just a very procedural. Yes, absolutely. How to think about this. So is your claim that the actual, you're saying that the actual bias claim was never adjudicated on the merits? So our review would be de novo. This question of whether there should be a hearing is something we would approach de novo. Absolutely. Okay. And why don't we have to presume that it was adjudicated on the merits? Because in this instance where the court gave a reasoned opinion about all of the other claims and it did not address this claim, the argument is that they didn't decide this claim. This isn't, for instance, an example where a court gives a summary dismissal. In this case, they gave a reasoned opinion and did not address this claim. Of actual bias. They did not address the actual bias claim. They addressed the McDonough claim. And what is your greatest argument that you actually raised that through the state courts as a claim, actual bias? We've heard the one sentence or so lead in. What do you point to as your best proof that you raised the actual bias claim in a way that it had to be adjudicated? We first presented the facts, which we then, which we then stated could get relief under three different theories. And we cited Smith v. Phillips as one of the, as the support in the state court. Did you make any argument about actual bias and call it actual bias and say, in this case, I'm just asking, in this case, we have actual bias because X, Y, and Z? Not in so many, not in those words. But what we did was we set forth the facts for it and then argued that those facts. You mentioned three ways that, three ways. And the next strongest argument is you cited the Smith case. And we cited the Smith case for our actual bias. I'm just asking to say, as to actual bias, see Smith. I'm just asking. I can find that. If you don't know what I can find. I don't know what's on the top of my head. I apologize. We're just getting in the bushes on that. Thank you very much. Anything else? All right. Thank you very much. Thank you very much. All right. We'll adjourn court and we'll step down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Dennis W. Shedd, Stephanie D. Thacker, Pamela A. Harris